Filed 4/3/15  In re M.W. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.W. et al., Persons Coming Under the Juvenile Court Law. | B257007<br>(Los Angeles County<br>Super. Ct. No. CK83432) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>NORA B.,<br><br>        Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County, Deborah L. Losnick, Juvenile Court Referee.  Affirmed.

        Andre F.F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant.

        No appearance for Plaintiff and Respondent.

———————————

INTRODUCTION

Nora B., mother of M.W. (age 8) and Z.W. (age 7), appeals from the summary denial of her Welfare and Institutions Code section 388[1] petition for modification. She contends she made the necessary prima facie showing to justify holding a hearing on her petition. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The dependency of M.W. and Z.W.*

The juvenile court sustained a petition finding true the allegations that mother and father, Miles W.,[2] have a history of engaging in violent physical altercations in the presence of M.W. and Z.W., who were then ages four and two, respectively. Father threatened to kill mother. For her part, mother failed to protect the children and allowed father to reside with the children and have unlimited access to them. The court removed the children from mother's custody.

As reunification services, the court ordered mother to complete 52 weeks in a domestic violence counseling program, and a parenting education course, and to undergo individual counseling to address "all case issues including anger management." The court allowed mother to have unmonitored visitation at the children's placement but monitored when they left the premises. The Department of Children and Family Services (the Department) had discretion to liberalize visitation.

In August 2011, the juvenile court lifted the supervision requirement for mother's visits.

The juvenile court terminated reunification services at the 18-month hearing held in February 2012, after finding mother had not complied with her case plan and had not demonstrated the ability to provide for the children's safety.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Father is not a party to this appeal.

2. *Post reunification*

Mother and father had another violent confrontation in July 2012.  Father attempted to run mother over with his car while the children were riding with him.  In response, the juvenile court reinstituted supervised visits for mother and the children. Between February 2012 and April 2013, mother visited the children once.

The Department had placed the children with their paternal grandmother Rosalind W.  The paternal grandmother struggled with the decision whether to adopt the children because she was apprehensive about terminating the parents' legal rights.  She finally opted for guardianship with the possibility of pursuing adoption later.  In November 2012, the paternal grandmother became the children's legal guardian. Accordingly, mother's parental rights were not terminated.

Mother gave birth to a third child, E.B., in February 2013.  The juvenile court declared him a dependent pursuant to section 300, subdivision (j) (abuse or neglect of a sibling)[3] and detained him from mother.

In April 2013, the guardian indicated she was ready to adopt the children.  The guardian wanted the parents to maintain a relationship with the children after adoption and agreed to ensure that the court's visitation orders would be followed.  The Department recommended that parental rights be terminated and that the guardian adopt the children.

The juvenile court summarily denied mother's section 388 petition, filed in August 2013, seeking return of the children to her custody or reinstitution of reunification services and liberalization of visits to unmonitored.  The ruling was made on the ground that the best interest of the children would not be promoted by reinstituting reunification services.  The court noted that the section 300 petition was filed in August 2010 and so the dependency was three years old.

By October 2013, the guardian had moved the children from their school in Pomona, where she worked, to a school closer to home in Beaumont.  The guardian

---

[3]     E.B. is not at issue in this appeal.

3

found that M.W and Z.W. had been sleep-deprived because of the commute. Although her niece Antoinette had been helping the guardian by babysitting and transporting the children to their new school, the niece died in a car accident. The guardian decided to take early retirement. She was already on medical leave and did not want to look for a new babysitter which would only put the children through more changes.

Between April 2013 and December 2013, mother saw the children three times and contacted them about once a month. The guardian reported mother did "not keep her visits as planned." Nor was mother employed or candid about where she lived.

Mother gave birth to her fourth child, K.C.B., in March 2014.[4] In April 2014, the Department reported that mother had visited M.W. and Z.W. twice in five months. Also in April 2014, mother filed her second section 388 petition seeking renewed reunification services or return of the children to her care. The juvenile court summarily denied the second 388 petition finding mother failed to make the requisite showing entitling her to a hearing.

3. *The section 388 petition at issue*

In connection with the adjudication hearing for infant K.C.B., on May 15, 2014, mother submitted a letter dated May 14, 2014 from Narconon Fresh Start Outreach Center. The letter listed the courses mother had completed and reported that mother "has greatly improved in her lifestyle being well dressed and happy and willing to participate in every group." She showed "a great improvement [in] . . . understanding, responsibility and ethical behavior since [she] completed the program." The letter added that mother was "learning responsibility, problem solving, common sense, patience and curiosity. [Mother] has made a tremendous improvement since she has started this program in December." The juvenile court read the letter and declared it to be "very positive."

However, during K.C.B.'s adjudication hearing, the Department expressed its concern, although mother had attended the domestic violence education classes, that she had not "fully learned from those programs, based on the fact that she is still involved

---

[4]     K.C.B. is not at issue in this appeal.

4

with the B[.] father with whom she has had a domestic violence incident." The juvenile court heard about the March 2013 incident, in which mother smashed the cell phone belonging to E.B.'s and K.C.B's father. The juvenile court sustained a petition naming K.C.B. a dependent under subdivisions (b) and (j) of section 300 because mother continued to have a history of domestic violence. The court declined to remove the child from mother's custody or to order mother to undergo another domestic violence class, stating mother's "underlying case plan is sufficient, as far as I am concerned, and that which she has finished she does not need to redo." The court found mother had "actually made significant progress since our last hearing."

Four days after K.C.B.'s adjudication hearing, mother filed her third section 388 petition seeking (1) return of the children to her care, or (2) resumption of reunification services and unmonitored visits. As changed circumstances, mother cited from the May 14, 2014 letter, previously submitted to the court, that she had completed 62 domestic violence and anger management classes, 52 parenting classes, and 23 drug education classes, and several individual counseling sessions. Mother noted she had stable housing and had custody of K.C.B. and unmonitored visits with E.B. In addition to the May 14, 2014 letter, mother attached to her petition the same documents included with her second section 388 petition, namely a November 14, 2013 progress report from her program; certificates of completion dated May 14, 2014 for courses in domestic violence, parenting, and drug and alcohol education and relapse prevention. As she had in her previous two petitions, mother asserted that the change in order would be in the best interest of the children because she had "made the changes necessary in her life to provide a healthy home environment for her two children. She is bonded to the children. It would be in their best interest to have a relationship with their mother. The current caregiver is the legal guardian but she plans to adopt the children. If the children are adopted they may never have a relationship with their mother or siblings." Mother added that the adoption home study was not yet complete.

The court summarily denied mother's section 388 petition explaining that the petition did not state new evidence or a change of circumstances. The court added a

notation that "This information in the petition was given to the court on May 15, 2014 [at the adjudication hearing for K.C.B.]. There is no new information." Mother appealed.

CONTENTION

Mother contends the juvenile court abused its discretion in denying her a hearing on her most recent section 388 petition. The Department did not take a position in the juvenile court in response to mother's section 388 petition, and did not file a brief on appeal.

DISCUSSION

Mother contends she made the requisite prima facie showing. She emphasizes that in this appeal she only seeks *unmonitored visitation* with the children, even though her petition requested outright custody of the children, or in the alternative the reinstitution of reunification services *and* unmonitored visitation. Nonetheless, even accepting mother's petition to be limited only to unsupervised visits, she did not make the necessary showing to justify holding an evidentiary hearing.

Section 388 provides for the modification of juvenile court orders when the moving party presents new evidence or a change of circumstances *and* shows that the modification sought is in the child's best interest. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.)

To obtain a hearing, the moving party must make a prima facie showing of both of these elements. (*In re Brittany K*. (2005) 127 Cal.App.4th 1497, 1504.) The petition must be liberally construed in favor of granting a hearing, and the prima facie requirement is met if the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. (*Id*. at p. 1505.) "If it appears that the best interests of the child or the nonminor dependent may be promoted by the proposed change of order . . . the court shall order that a hearing be held . . . ." (§ 388, subd. (d).)

The summary denial of a section 388 petition is reviewed for abuse of discretion. (*In re A.S*. (2009) 180 Cal.App.4th 351, 358.) "The determination of whether to change

6

an existing order is 'committed to the sound discretion of the juvenile court, and [its] ruling should not be disturbed on appeal unless an abuse of discretion is clearly established.' [Citation.] An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination. [Citation.]" (*In re Marcelo B*. (2009) 209 Cal.App.4th 635, 642, citing *In re Stephanie M*., *supra*, 7 Cal.4th at p. 318.)

As to the first prong of the section 388 showing, mother has not demonstrated prima facie a change in her circumstances. Most of the supporting evidence is more than a year old and had already been submitted with mother's second section 388 petition. The most recent document, the May 14, 2014 letter, shows that although mother completed many courses, she still has more work to do. For example, the letter states: mother "realizes that the works [*sic*] *is not finished . . . .*" and "I am *recommending* mandatory aftercare for parenting, life skills, and individual counseling . . . . This *will be essential for her to become fully self-sufficient in her future*." (Italics added.) The letter does not indicate mother has finished counseling. Nowhere does the letter's author indicate that mother is ready for unmonitored visits. Moreover, although the juvenile court stated at K.C.B.'s adjudication hearing that mother had made "significant progress" in her domestic violence class, it also had evidence of a domestic violence incident in 2013, and it declared K.C.B. a dependent pursuant to section 300, subdivision (j) (abuse or neglect of a sibling). Liberally construed, mother's petition demonstrates changing, but not changed, circumstances. "[T]he petitioner must show *changed*, not changing, circumstances. [Citation.]" (*In re Mickel O*. (2011) 197 Cal.App.4th 586, 615-616.) Mother failed to carry her burden to show prima facie changed circumstances.

Nor has mother made an adequate showing as to the second prong of section 388. She contends that unmonitored visits would be in the children's best interest because she has a bond with them, and unsupervised visits would promote stability for the children because she could help the guardian care for them. Mother's evidence of a bond is slim. She "acknowledges she currently has had only sporadic visits." In fact, mother visited

7

the children six times in 26 months, and called them only once a month. Without more, mother's assertion is speculative that the existence of a bond "is undisputed."

Furthermore, mother has not demonstrated how liberalizing visits would promote stability and continuity for the children. Observing that the Department has not finalized the adoption because of concerns about the guardian's ability to provide for M.W. and Z.W., mother argues that it would advance the children's permanency and stability to allow her to have unmonitored visits so she could assist the guardian with the children's care. However, as mother failed to visit the children during the period of supervision, we are at a loss to comprehend how she would be more likely to see her children if visits were liberalized or how only unsupervised visits would promote stability. Therefore, mother has not provided any facts that would demonstrate that the best interests of the children would be promoted by allowing her unmonitored visits and so no purpose would be advanced by holding a hearing on this petition. The order summarily denying mother's third section 388 petition was not an abuse of juvenile court discretion.

DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

EGERTON, J.[*]

---

[*] Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9